This is our second case in the morning. Huntington v. Champaign-Urbana Mass Transit District for the appellant, Mr. Horigan. Is that the right way to pronounce it? Horigan. And for the appellee, Mr. Park. You may proceed. Before I launch into my arguments, based upon my brief, I'd like to discuss issues raised in the motion to strike portions of my reply brief. And I would point out to the Court that it's axiomatic that all interlocutory orders entered by the trial judge merge into the final judgment. So any orders entered by Judge Ford that are I would be more than happy to concede that I did not raise any issues about the affidavit filed in my initial brief. However, a reply brief is a brief where you get to deal with issues raised in the initial brief by the appellee. And I would point out to this Court that on page 10, the appellee took an argument which is entitled, Lack of Evidence of Movement of the Bus. The affidavit which was filed and stricken by the Court below deals in part with evidence of movement of the bus. When the appellee raised the issue that there was no evidence or lack of evidence of movement of the bus, that opened the door for me to address that issue with matters that were in the record, and I suggest that that motion should be my client an oral argument on his case, something that was deprived him in the Court below. Judge Ford, for reasons known only to him, issued a written opinion four days before the oral argument was scheduled to be heard, and we did not have an opportunity to argue any parts of the plaintiff's case. When we look at this case we have to be mindful of where we are and what the issues are, and they're very, very narrow. When a motion for summary judgment is filed and granted, certain things are taken as admitted, and the gist of the order that was entered by the Court below is that as a matter of law or fact, my client was guilty of more than 50 percent comparative fault in causing this accident. On that basis then, the fact of how the accident happened, the fact that it was the fault of the bus company in whole or in part for causing the accident, is conceded by the defendant. The case law with regards to common carriers is very interesting. Common carriers are of a duty to exercise the highest degree of care consistent with the mode of conveyance used and the practical operation. What's interesting in this case is that in the instances where the common carrier is the only instrumentality that causes the accident, a rebuttable presumption arises, and the carrier must explain why the accident resulted from a cause for which it should not be held responsible. There is nothing in this record, nothing in the summary judgment motion, nothing in the evidence where the bus company explains why it is not responsible for causing this accident. So what do we have here? We have facts that are really non-disputable. It seems like you're arguing strict liability. No, I'm not arguing strict liability, but the case in my reply brief says once that presumption is raised, the carrier must explain why the accident resulted from a cause for which it should not be held responsible. What that is basically is the burden shifting provision. It takes the burden of proof away from the plaintiff, and it places the burden of proof on the defendant. It does not impose strict liability. The defendant may come in with some testimony or some evidence that rebuts the presumption. That's all they have to do. There is no evidence, there is no testimony, there are no depositions, there are no affidavits. There is nothing in this case from the defendant to rebut all presumptions that it caused this accident because it is the sole instrumentality. Furthermore, they didn't contest that the accident happened. There is nothing in there that contests that the accident happened, that it happened the way my client said it happened, that he was injured as a result of this. All that is in there is them saying look at this step. Based upon what's in this step, the defendant is not, or the plaintiff is more culpable than the defendant. There's a conundrum here that I've researched and I'm not happy with the results of, but I have to live with, where courts in this state have historically taken common carrier cases and compared ordinary negligence as comparative fault when the standard of care for the bus company is much higher. And I would like this Court to think about this when we go back in the chambers as to whether or not the level of comparative fault negligence of the plaintiff has to be something more than just mere negligence but something approaching reckless conduct. Because the bus company is basically the guardian of their passengers. So we have all of that and I want to talk about the deposition because it comes down to this deposition. And I don't know if the Court has reviewed the deposition transcripts. This was one of the most difficult depositions I've ever taken in the 44 years of my practice. Sam as a result of this accident, weak intent, has become a functional quadriplegic and he's been in a nursing home in Champaign County for over a year from the time of the accident, the time that these depositions were taken. People who spend a lot of their time not moving have a lot of problems. A lot of those problems are respiratory problems. And Sam developed a pneumonia or something. I don't remember what it is. It's not on the record. But it was so serious that he was rushed to the hospital, placed in intensive care, ventilated with an intubation. It's in the deposition that indicates where we were and what we were doing there. And his condition was so severe that I was afraid he was going to die. And I wanted to preserve his testimony and we ended up, and you'll see that there's all sorts of stipulations in terms of we're going to let you take this step, we're not agreeing to this step, and we want to take the discovery step before the evidence step. But his condition was so severe that I was afraid he was going to die. So we are in this room and we took four sessions or three or four sessions of depositions trying to get Sam's story out. First of all, I don't know if you've ever been in an ICU unit, but they're very noisy places. There's all sorts of machines and equipment going, trying to keep the patient alive while we're trying to ask them questions. It was so difficult. If you look at the first two sessions, the first thing that Mr. Parker says to Sam is, can you hear me? That's how bad this was. And every answer he had to struggle to answer. And his answers were not more than three or four words. We took multiple breaks. It was very difficult. And it was so bad that, first of all, we're all in full gowns and gloves and everything else. And the court reporter is the only one sitting. The rest of us are like huddling over this. Well, what it ties into is why the information that we have to support this summary judgment motion is so sparse. And it's so sparse because it was very difficult getting anything out of Sam. So we have really two questions here that the whole case hinges on. The one question was asked first of Sam, and the question is, what happened? How did you fall? And he says, well, the bus took off and I fell. And one thing we know, and if you look at the affidavit, he'll tell you that the bus took off faster than normal, but one thing we know is that Sam was sitting on a bus. Since there's no evidence that he had any problems walking, any impairment of his physicality, was wearing any shoes that were loose, we have to assume, as the affidavit states, that he was normally able to do these things. He wasn't impaired in any way. So he says he stood up and he started walking. First of all, the bus stopped at a light. He stood up and he had a Pepsi bottle in his hand. He decided to take it and throw it in the trash receptacle. As he's walking forwards, to put this away, with forward momentum, the bus takes off with such force that he's propelled backwards and he falls down. We have a statement that the bus took off. Now when you say took off, most people use that term to describe a fast and rapid motion, not the bus started moving. We have the circumstantial evidence that it took off with such a force that someone who was walking forward is propelled backwards. So we have that. Then what the defense wants to rely on... He's a 20-year veteran of riding buses, right? Yeah, he is. A 20-year veteran of riding buses has a pretty good idea of what to expect when a bus starts. Because of the dynamics of the bus when you're standing up, you can't tell what happens with the lights because you're higher than the windshield block should be. But he knows it stopped at a light, right? He also would have a reason to presume that a bus company that has the highest standard of care for protecting the passengers on the bus would at least take a look and see if it was safe to start before proceeding rapidly from a stop. The defense position here comes from a deposition of... Let's just take a page from C-118 where they ask Sam, So when it started moving, can you tell me anything about how it moved? Answer. Witness gives an audible answer. I'm sorry, Sam, I didn't catch the answer. You can say it again. I don't know. I guess it just moved. And then we have to repeat that because everything is so hard to get through. And that's dropped at that point and nobody goes further. In a normal deposition when someone isn't struggling for every answer and every word, probably follow-up questions would have been asked such as, well, can you tell me that it started off fast? Did it start off slow? Was it jerky? Can you tell me anything about that? But because of Sam's condition, and I don't blame anybody for this, it was enough to get anything out of him. But now what the defense wants the court to believe is that Sam doesn't know how the bus started, but the facts pretty much show that it took off and he fell down. When he was moving forward, it propelled him backwards. And wants to somehow stretch this one answer to one vague question about... It's almost like an esoteric question. Can you tell me how the bus moved? I don't know. It's not the best question, but it's not a bad question. But it doesn't really negate the fact that the bus company did something wrong. On top of that, we have our complaint that alleges all sorts of things that the bus driver should have done. He should have checked to see if everybody was sitting. He should have gone so fast. None of that stuff is rebutted by any facts. Are there any cases that say that's the duty of the bus driver? No, but there aren't any that say it isn't. There are cases that have been cited by the defendant that talk about buses swerving and things and people falling down. And saying, well, that's just too bad. But those are cases involving a third instrumentality. A bus was cut off by a car or had to make a sudden stop due to traffic. Had to close it to an accident, which were cases where there was no external force controlling how the bus was driven at any given time. So we have the comparative fault issue here. And my question for you as a panel is, does the person who causes the movement of the bus in such a way that Sam falls down ever going to be less at fault than someone who is just standing in the bus? And I suggest to you, Sam's conduct with regards to this accident was passive. The bus company's conduct with regards to this accident was active. And they have the highest standard of care to protect Sam. They're not his insurer. But when they start that bus up... What about the passenger who knows they're at the next stop? And they stand up, some would say, early. And they go to the side door, the back door of the bus, and they don't hang on to anything. And the bus pulls in to the stop because their car is parked, so it makes that movement, which is perhaps an ordinary movement, but if you weren't properly balanced or you were inattentive or you looked over your shoulder at another passenger, you could fall down. You could fall down if you were a 16-year-old kid. You could fall down if you tripped over your feet. But the fact of the matter is, if you are coming up to that same scenario and the bus driver decides to slam on the brakes for no good reason and does a maneuver that is not one that is anticipated by bus passengers, then there's liability here. And, you know, this is a jury question. You've got to remember that this whole issue was taken away from the jury, and it shouldn't have been. That's why we have jury trials. We have jury trials so a jury of Sam's peers can ask those questions to themselves in a jury room, and if the answer is the way Judge Ford saw it, then Sam doesn't recover. But he's entitled to that jury trial. It was taken away from him with questionable facts. There's no facts supporting anything from the bus company. Everything is, well, Sam should have been holding on. Is the fact that you weren't holding on sufficient in this case for you to take this case away from the jury? And I submit to you that it's not. And so I urge this Court to reverse the finding of the Court below and get us back where we belong and get to be in front of a jury and get to hear this case and argue it properly. Thank you. Any questions? Any other questions? Okay. Thank you very much. Thank you, Your Honors. Just to address a couple things here. First of all, counsel talked about the motion to strike and basically said I concede the motion to strike. The motion to strike talking about the injection of what I've characterized as fabricated facts that don't exist in the record and are contradicted by the record into his appellate argument, alleging fast speed, higher speed than usual, abrupt, none of which is in the record in the trial court. It's not in the deposition testimony, not offered anywhere else. Plaintiff has essentially conceded that point. Then he goes on to talk about, well, I also essentially concede that he waived his argument to argue about the amended affidavit that the plaintiff tried to add at the summary judgment level in the trial court. He says, well, yeah, basically I concede that, too. But Mr. Parker in his response brief mentioned something about the amended affidavit and therefore I've opened the door. No, Your Honor, no, I haven't opened the door. The reason that was mentioned was a very limited purpose because even in the original appellate brief by the plaintiff in this case, he had attempted to insert a reference to that stricken amended affidavit and therefore all I did was point out to the court as to the background as to why that affidavit was stricken and why that comment cannot be relied upon at this level. So no, I have not conceded anything. I have not opened the door to anything. And by the fact that the plaintiff hasn't filed any opposition or any response to my motion to strike in this court, again, I think basically we know what that means is why he stood up here and said I have to concede. Let's move on. Counsel attempted to make hay about the situation and scenario at the hospital. Justice, you asked the question, is this in the record? Well, the fact that we were at Carl Hospital in the intensive care unit is in the record. Thereafter, nothing else is in the record. Other than the questions and answers. Yes, but in terms of attempting to inject medical conditions, loud room, anything like that, certainly medical conditions are not in the record here. Counsel has tried to inject something that is not in the record. Interestingly and importantly, if there was such a problem with this deposition, which occurred in January of 2017, there was no subsequent attempt to remedy anything by the plaintiff. No subsequent motion brought to strike the deposition. Plaintiff decided not to take the evidence deposition on that day and then never decided to take the evidence deposition. There was just no attempt to do anything. Then, and by the way, the motion for summary judgment wasn't filed until April of 2017. Three months later. It's not as if I walked out the door of the hospital and the next day walked into the courtroom and filed a motion for summary judgment. It was three months, nine months in total from the time of the filing of the lawsuit in terms of the plaintiff's opportunity to gather evidence in this case. But I think what's very telling, very telling, is if the court looks to the very last, practically the very last lines of the deposition transcript, the court will look and see counsel's own words in the record. And I quote, and it says, we've really kind of labored getting the testimony correct. On January 19, 2017, when we completed that deposition, counsel stated, for the record, we've really kind of labored getting the testimony correct. And for three months didn't do anything else. And all of a sudden, when I filed my motion for summary judgment, which I'll get to those facts in just a minute, all of a sudden now the deposition testimony is not complete, not accurate, lots of problems. He wants to have it both ways, Your Honors. He didn't do anything. He doesn't get to try to now stand up and say, oh, well, I wish I would have done all these things. Essentially, he's asking you to give him a do-over, to fill in the blanks for him. And that's not what this court is for. Now, let's talk about this issue of rebuttable presumption, because, Your Honors, I don't know why we're even talking about that here. That issue's not on appeal. The trial court found that there was a prima facie case made by the plaintiff on the sole basis that my client is a common carrier, that the plaintiff said he was on that bus, and the plaintiff said he was injured on that bus. If the trial court looks at the, excuse me, if this court looks at the trial court's order, the trial court will see that that was the sole reason why the trial court found that there was a prima facie case. We haven't appealed that issue, so I don't know why we're even talking about it here. The issue of duty is not here. What we're talking about here is the comparative negligence issue. The comparative negligence clearly shows, and I'm going to go through the testimony, because counsel wants to try to limit it, but actually it's rather expansive. The clear testimony overwhelmingly shows that the plaintiff was more than 50% responsible for his alleged injury as a matter of law. What facts are in the record? Well, we have to look at the defendant's conduct, and we have to look at the plaintiff's conduct when comparing these. The only facts that are in the record in terms of the defendant's conduct, again, all this comes from the plaintiff, the only fact is, quote, I guess it just moved, referring to the bus. That's the only fact in the record talking about the defendant's conduct. No other witnesses, no other affidavits, nothing. Now, counsel has said, well, all we're relying on is the fact that the plaintiff wasn't holding on to any safety rails, handholds when he decided to walk. Not true. That is one fact we are relying on. Let me build all of the facts, because again, we have to compare these. So again, remember we were over here with just, I guess it just moved, in terms of the defendant's conduct. Over here we have the plaintiff was seated on the bus. The plaintiff was seated in the middle of the bus. The bus had stopped at a red light. It was not a passenger stop. The plaintiff was able to see the red light when he was seated. He's testified to this. He observed this red light had been red for a few minutes. As you put it, this plaintiff is someone who has ridden these buses for 20 years every day. He knows a red light's going to change. He then decided to stand up to throw a Pepsi bottle in a trash can in traffic. There's no need to throw a Pepsi bottle away in the trash can at that moment in time while you're in traffic. When standing, he admits he didn't hold on to anything. He then decides to walk forward, still not holding on to anything. He walked forward about 10 feet, not holding on to anything. He was always behind the bus driver. And finally, he has admitted he does not know how long after the bus moved as to when he fell. I asked him, how long after the bus moved did you fall? He said, I don't know. So there was some backpedaling for some time. Did the backpedaling, did the bus cause something? The testimony's not there. So all of these facts I just talked about are weighed against the one fact we have over here. And the only fact over here is the plaintiff saying, I don't know. I guess it just moved. Let me reiterate this question for you. Correct. And I'm about to talk about that testimony. Because I wanted to talk about that series of questions. Because counsel in his brief has attempted to allege my question is somehow ambiguous or it doesn't refer to anything. Well, the reason I asked the ultimate question that I'm going to get to so broadly is because it was literally, can you tell me anything? But here's where I started off. I asked, and then at that moment after you walked about 10 feet, what happened? Answer, the bus took off and I fell. So let's clarify a little later in the deposition. Question, can you tell me about the movement of the bus? Answer, it was moving. Following up further, because again, I'm still trying to dig into this. Question, so at the time it started moving, can you tell me anything about how it moved? Answer, quote, I don't know. I guess it just moved. End quote. So the took off comment, if you want to take that in a vacuum, counsel tries to make it, oh well, this must mean the bus moved fast. Your honors, take off doesn't mean fast. You can take off fast, you can take off slow, you can take off left, you can take off right, you can take off backwards. That in and of itself doesn't mean anything. But when you take it into the context of these series of questions that I asked to try to drill down, well, can you tell me anything about it moving, he ultimately admits, I don't know, I guess it just moved. So that is the only testimony of the conduct of the defendant that is weighed against the barrage of testimony on this side of the plaintiff's conduct. Of moving from a place of safety to throw away an empty Pepsi bottle when no reasonable person needs to get up to throw a Pepsi bottle away in the middle of a trip, especially at a red light. A gentleman who has been on this bus for more than 20 years knows this light's going to change. And yet, he's been on this bus for 20 years, he decides, I'm not going to hold on to anything. What reasonable person is not going to say, we know what's about to happen? He's going to fall over, any movement of the bus. And I'd like to point out that I cited a Supreme Court of Iowa case. Again, I know it's not precedent to be followed by this court, but I think it actually contained a pretty good discussion here where it says, a common carrier is well known that there will be bumps and jerks and moves, whether you're on a bus, a train, an airplane, even a taxi. These sorts of things naturally happen on a carrier. If you're going on a Greyhound bus, and we all know Greyhound buses, there's a bathroom in the back. You want to go to the bathroom? You're going to be careful and hold on as you're going back there, back to your seat. These bumps and jerks and things like that can naturally happen on a common carrier, especially, again, if anyone's ridden the Amtrak train, we know these bumps and things happen. That does not necessarily mean that any negligence has been made by the common carrier. That's just a matter of going down the road or the rails or in the air. That's why they tell you to put your seatbelt on when you're still seated in an airplane. The took-off comment by itself is a red herring. You have to get down to what he ultimately testified to was, I don't know how the bus moved. When you compare that, I don't know how the bus moved, with all the evidence that we know we do have of the plaintiff's conduct, it is very clear that his conduct is overwhelmingly more than 50% in the trial court was correct. To briefly touch on the issue, if this court decided to examine the amended affidavit, I'm talking about the amended affidavit the plaintiff attempted to insert in response to the motion for summary judgment in the trial court. As I said, the testimony regarding the movement of the bus in the deposition in January was, I don't know, I guess it just moved. And yet the affidavit, the amended affidavit, because the first affidavit they tried to provide was signed by the power of attorney, which clearly was not allowed. We called them on it and they took that back, essentially. But then they tried to have one that was purportedly signed by the plaintiff that included language of, the bus moved at high speed. Speed was higher than normal. The movement was so abrupt and fast. This court has found, and again we cited in our brief the Smith v. Ashley case, the 1975 case, that you cannot attempt to thwart a dispositive issue by creating a fact issue by contradicting your prior sworn testimony. That's exactly what this affidavit tried to do. That's exactly what the briefs in this case tried to do from the plaintiff when they tried to insert these facts, which again, that's why we brought the motion to strike in this proceeding as well. This testimony about high speed, speed was higher than normal, so abrupt and fast, is directly contradictory to what the plaintiff said when asked those series of questions. And he ultimately said, I don't know, I guess it just moved. That's not clarification. That's 180 degrees difference. On one moment in January he's saying, I can't tell you about how it moved, and then supposedly five months later he's talking about speed and abrupt stops and being fast. That's not clarification. That's contradictory. And as this court has found in Smith, and plenty of other courts have found in this state, you're not permitted to try to create a genuine issue of fact by contradicting earlier sworn testimony. Your Honor, you brought up a good example a moment ago of if a bus was pulling into a stop and someone was standing next to the door not holding on to anything, even if they were a 16-year-old kid, a lot more fit than me, a lot stronger. And counsel then said, well, yeah, but if the bus slammed on its brakes, well, again, Your Honor, that didn't happen here. I don't know why we keep getting things inserted here that aren't in the record. The bus didn't slam on its brakes. There's no testimony for that. So your example is very apropos, I think, because again, if the bus was pulling into a stop and someone is standing next to the door, not holding on to anything, not paying attention, and the bus just naturally moves in, and they accidentally lose their balance, is that the bus driver's fault? No, no, it's not. That person who's not paying attention, not holding on to anything, and they may be standing up when they don't need to, is more than 50% responsible for their own accident. Ultimately, Your Honor, it comes down to the fact that the plaintiff doesn't have a testimony. That's why the trial court found imperative negligence as a matter of law against the plaintiff. Testimony so overwhelmingly favors the defense in this case. Counsel has gone on at length about his client was robbed of a trial. The trial court took it away from him. But that's why we have summary judgment. Summary judgment statute and rules are in there for a very good purpose, and it's to weed out cases just like this. We don't need to spend time at trial when the evidence is what it is. And this evidence, if put forth at trial, is not going to change. That evidence from the deposition is coming in. It's what it is here before you. So it is not improper for the court to grant summary judgment. It happens all the time. It's part of our procedures in this state to, again, weed out those cases that should not go to a jury. Summary judgments usually aren't granted on proximate cause issues, though, because that's usually the background. Correct, Your Honor. So your argument basically is no reasonable juror could find that the plaintiff was less than 51%, or 50.1% responsible for his own injuries. That's correct, Your Honor. Absolutely. Why should we decide that instead of a jury? Because it's so obvious? Is that your argument? Yes. That is the argument. We have to look at the facts. And we have a mountain versus a molehill. And the plaintiff had plenty of opportunity to bring in other testimony. He never did. So yes, Your Honor, you're absolutely right. So there's no evidence, as I understand it, that some buses take off and leave rubber, and some buses take off slowly. Do buses take off from a stoplight differently in different situations, or is it all pretty much the same? Or if there's no evidence, I guess you can't even answer that. In this record, in this case, there's no evidence of that for us to talk about. But I can tell you, in general terms, what they're trained on is a slow, gradual acceleration. But to your point, this court in Burkett, that I cited in my brief, found exactly that in terms of the contributory negligence issue. That irrespective of whether there was a duty and a breach, the gentleman who was trimming trees, who saw the utility pole that had been cut off by Illinois Power, knew it was there, decided to still get up, trim the trees on top of this thing. And then as he was coming down the tree, it slipped and fell. I would say, in fact, that argument is perhaps closer than we have in this case here, in terms of comparing the mountain versus the molehill. So yes, Your Honor, absolutely, there is no reasonable jury that could find, just looking at these facts, they could not find that the plaintiff was not less than 51% responsible. Thank you, Your Honor, if you have any further questions. I see none. Thank you. Thank you. Rebuttal? Touching briefly on the issue of the motion to strike, I don't do a lot of practice in front of the public court, but I seem to recall that when a motion is filed, the respondent does not have leave to respond until the court requests a response. In this case, the court decided to take the issue of the motion to strike with the I tried that once in the 5th District and I was yelled at. I decided to follow the rules. But let's look at what Mr. Parker had to say. I think there's something that is very interesting here. He says, the testimony is not there. And that's the problem with this deposition. The testimony really is not there to support his claim. We know with regards to the deposition that my client was in the ICU. We know that people don't go to an intensive care unit who are in good health. Why was there no evidence deposition? You could barely get the discovery deposition done. An evidence deposition would have been possible. The depositions are incomplete. They are as complete as they are. They're done. And I'm not contesting the act. If an evidence deposition would be impossible, what would you do at a trial? Well, Judge, you may or may not recall, but probably a year ago, the rules with regards to using discovery depositions as evidence depositions has been expanded to the extent that if I was able to come into court and testify, then I would have this to establish the facts of the case. The discovery deposition? Yes. It's rule used to bar parties. And I think it was a year and a half ago or two. When you're 69 years old, time flies so fast, you can't keep track anymore. But I believe that that's what our plan was. So we talk about this mountain of evidence. We have Sam saying the bus took off and he fell. We have Sam going forwards and then being propelled backwards. You pointed out, we have a 20-year veteran of bus riding. He has a very clear idea of how that bus should have left that intersection. And 99% of the time when the bus driver was doing the slow and steady acceleration that Mr. Parker has admitted is the rules for the bus company, you don't have to hold on. Why did he fall down this time? Because the bus took off quickly. How do we know that? Not only did he say it did, and then later in the deposition didn't answer the same way he did previously, but that testimony is still there. We have the circumstantial evidence that shows that he felt that the force of the bus was enough when this adult man is walking forwards, is now propelled backwards and he falls. That circumstantial evidence shows that this was not a slow and gentle start as this man had expected. 20 years of bus riding, he knows what he can and cannot do on a bus and when he needs to hold on and when he doesn't. So it comes to me... Did he say in his deposition that he never holds on when he does that? No, he didn't. But we can take the circumstantial evidence once again that he's a veteran bus rider and we can infer from that that he has a fair idea of what buses do. And this was something that he wasn't expecting. He knew the bus was going to start. I mean a bus is at a stoplight, you know it's going to change. So why did he fall? Because the bus took off. Now what evidence do we have to the contrary? We have none. We have zero evidence. This is all the same issue. And it isn't a mountain against a molehill. It's all taken together. And it's something that a jury should decide. A jury should decide these issues, not a judge. We have to decide whether or not a jury would get to hear a lot of things that we didn't hear here. Like did the bus have a mirror? Did the bus driver take a look in the mirror and take a look to see if there was any motion in the bus? What constitutes negligence apart from the duty is really a decision after the court of fact decides that there is some negligence and there is a duty. It's up to the jury to decide what standard of care and what kind of conduct they think is appropriate in their community. And my client was deprived of that and I believe he's entitled to that. And thank you very much for your time and we'll look forward to your ruling. Thank you counsel. We'll take this matter under review.